UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

HAMMER HAAG STEEL, INC.,

    Plaintiff,

v.                                    CASE NO. 8:17-cv-510-T-23JSS

PEDDINGHAUS CORPORATION,

    Defendant.
_____/

## ORDER

Hammer Haag Steel, Inc., sues (Doc. 21) Peddinghaus Corporation under Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") for deceptive trade practices, under 28 U.S.C. § 2201 for a declaratory judgment, and under Florida common law for fraudulent inducement. In an ongoing Illinois state court action, Peddinghaus sues (Doc. 16-5 at 36) Hammer Haag for breach of contract. Peddinghaus moves (Doc. 23) to dismiss Count III and to stay this action pending resolution of the state action.

## BACKGROUND

In January 2014, Hammer Haag agreed to pay Peddinghaus a total of $650,000 for a steel fabricating machine known as the "Ring of Fire." (Doc. 23 at 1) The contract obligated Hammer Haag to pay $520,000 before shipment and to pay the remaining $130,000 within thirty days after the day Peddinghaus installed the

"Ring of Fire" at Hammer Haag's facilities.  (Doc. 21-4 at 1)  Hammer Haag paid $550,000 but "withheld" the remaining $100,000.  (Docs. 21 at 3, 23 at 2)

On December 1, 2015, Peddinghaus sued (Doc. 16-5 at 36) Hammer Haag in the Twenty-First Illinois Judicial Circuit in Kankakee County, Illinois, for breach of contract.  Appearing in the state action, Hammer Haag failed to challenge personal jurisdiction, failed to challenge venue, and failed to remove the action.  (Doc. 23 at 2)  Three weeks after the removal deadline, Hammer Haag moved (Doc. 16-2) to arbitrate.  Denying the motion to arbitrate (the denial of which Hammer Haag failed to appeal), Judge Albrecht found that "the Court is not satisfied that Hammer Haag has . . . met its burden of proving that the terms and conditions that include the arbitration clause are, in fact, part and parcel of the contract." (Doc. 17-2 at 55)

On March 1, 2017, fifteen months after Peddinghaus sued Hammer Haag in state court, Hammer Haag began this action.  Peddinghaus moves to stay this action because, Peddinghaus argues, the state action involves the same commercial dispute at issue in the federal action.

## DISCUSSION

**The Illinois action and the federal action are parallel.**

Under *Colorado River Water Conservation District v. U.S.*, 424 U.S. 800 (1976), a federal district court in "limited" and "exceptional circumstances" can abstain from the exercise of jurisdiction in deference to a prior and parallel state court litigation

presenting the same parties, the same issues, the same evidence, and the same commercial dispute. In this instance, Hammer Haag admits that the federal action "litigat[es] substantially the same issues" as the state action. (Doc. 16-5 at 5) Also, the $100,000 sought by Peddinghaus in the state action is the same $100,000 sought by Hammer Haag in the federal action.[1]

Peddinghaus argues that the basis for Hammer Haag's FDUTPA and fraudulent inducement claims is that "Peddinghaus Quotation 33088 was a form of 'advertising' that 'misrepresented the characteristics' and 'the cuts/processes that the [Ring of Fire system] was supposedly capable of performing'" and that Peddinghaus "unilaterally 'changed the terms and conditions' of Quotation 33088 to 'eliminate[] the arbitration clause from the [resulting] contract' between the parties." (Doc. 23 at 11) As Peddinghaus insists, these arguments are "the verbatim of record defenses and arguments asserted by [Hammer Haag] against Peddinghaus" in the state action. (Doc. 23 at 11) Thus Hammer Haag's claims in the federal action and defenses in the state action are factually and legally parallel.[2]

---

[1] In Count I, Hammer Haag sues for approximately $100,000. In Count II, Hammer Haag sues for a declaration that Hammer Haag may withhold payment of the $100,000 that Peddinghaus sues for in the state action. (Doc. 21 at 5–6)

[2] "As with the arbitration theory, [the] fundamental premise of the FDUTPA cause of action mimics the theory [Hammer Haag] raised as a defense in the [state] litigation where it is currently being litigated. . . . The subject federal lawsuit and the Illinois litigation remain one and the same." (Doc. 23 at 7–8)

- 3 -

**Exceptional circumstances warrant staying the federal action.**

Among the factors determining whether "exceptional circumstances" warrant *Colorado River* abstention are:

> (1) the order in which the courts assumed jurisdiction over property; (2) the relative inconvenience of the fora; (3) the order in which jurisdiction was obtained and the relative progress of the two actions; (4) the desire to avoid piecemeal litigation; (5) whether federal law provides the rule of decision; and (6) whether the state court will adequately protect the rights of all parties.

*Moorer v. Demopolis Waterworks and Sewer Bd.*, 374 F.3d 994, 997 (11th Cir. 2004). *Colorado River's* principles "rest on consideration of '[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" *Colorado River*, 424 U.S. at 817. No one factor is determinative, but a single factor "can be the sole motivating reason for the abstention." *Moorer*, 374 F.3d at 997.

### The potential for piecemeal litigation favors the state court forum, and the state action is further advanced.

Because the two actions involve the same litigants, the same issues and defenses, the same evidence and witnesses, and the same commercial dispute, a parallel federal action causes inconvenience and unnecessary expense for witnesses and litigants, squanders state and federal judicial resources, and presents a risk of inconsistent results. Also, Peddinghaus sued in state court fifteen months before Hammer Haag sued in federal court, and the state action is further advanced; a

July 13, 2017 order set an October 1, 2017 discovery deadline, and Peddinghaus moved for summary judgment on October 26, 2017 (see state court docket).

**Count III fails to state a claim for fraudulent inducement.**

Hammer Haag alleges (1) that on January 6, 2014, Peddinghaus sent Hammer Haag both "Quotation 33088" (Doc. 21-1 at 10) and a copy of Peddinghaus's "terms and conditions of sales" (Doc. 21-2), the latter of which includes a mandatory arbitration clause, and (2) that on January 23, 2014, "in reliance" on the January 6 terms and conditions, Hammer Haag sent Peddinghaus "Purchase Order CH012114" (Doc. 21-3). (Doc. 21 at 2, ¶¶ 10–13) Next, Peddinghaus sent Hammer Haag an order acknowledgment.[3] (Doc. 21-4)

But the parties dispute whether the contract included a mandatory arbitration clause. In the state action, Judge Albrecht denied Hammer Haag's motion to compel arbitration and ruled (Doc. 17-2 at 52) that "[t]he court is not satisfied that Hammer Haag . . . met its burden of proving that the terms and conditions that include the arbitration clause are, in fact, part and parcel of the contract." (Doc. 17-2 at 52)

Hammer Haag sues, alleges fraud, and demands rescission of the contract. To state a claim for fraudulent inducement, a plaintiff must allege (1) that the defendant falsely stated a material fact, (2) that the defendant knew of the statement's falsity or should have known of the statement's falsity, (3) that the defendant intended that the

---

[3] Hammer Haag attaches (Doc. 21-5) to the complaint the "new" terms and conditions, which Hammer Haag alleges that "Peddinghaus later claimed supplanted the January 6 Terms and Conditions," which omit a compulsory arbitration clause. (Doc. 21 at 3, ¶ 15)

- 5 -

plaintiff rely on the false statement; and (4) that the defendant detrimentally relied on the false statement. *Gemini Inv'rs III, L.P. v. Nunez*, 78 So. 3d 94, 97 (Fla. 3d DCA 2012). Under Rule 9(b), Federal Rules of Civil Procedure, a party alleging fraud must "state with particularity the circumstances constituting fraud."

Hammer Haag asserts (1) that "unbeknownst" to Hammer Haag, Peddinghaus "claims" to have changed the terms and conditions to omit the arbitration clause and (2) that "[a]t no time between January 6, 2015, and the initiation of litigation did Peddinghaus ever communicate the New Terms and Conditions to [Hammer Haag] or advise [Hammer Haag] that the January 6 Terms and Conditions were not part of the [Ring of Fire] contract or that it repudiated those terms and conditions of sale." (Doc. 21 at 3, ¶ 15, 16) Hammer Haag alleges (1) that "[b]y incorporating the January 6 Terms and Conditions into the contract for the [Ring of Fire], Peddinghaus ["represented" to Hammer Haag] that all disputes between the parties were subject to mandatory arbitration which it intended for [Hammer Haag] to rely upon" (Doc. 21 at 6, ¶ 46) and (2) that Peddinghaus's purported repudiation of the January 6 terms and conditions "rendered its incorporation of these terms and conditions into the [Ring of Fire] contract false statements of fact and rendered its concealment of the New Terms and Conditions fraudulent."[4] (Doc. 21 at 7, ¶ 49)

---

[4] Peddinghaus argues that there is no action for fraud in the inducement if the alleged fraud "contradicts" the written contract. (Doc. 23 at 22) *See Eclipse Med., Inc. V. Am. Hydro-Surgical Instruments, Inc.*, 262 F. Supp. 2d 1234, 1342 (S.D. Fla. 1999) (Ryskamp, J.) ("Reliance on fraudulent misrepresentations is unreasonable as a matter of law where the alleged misrepresentations
(continued...)

But Peddinghaus's alleged actions cannot amount to the false statement of a material fact. No false statement of material fact exists; Judge Albrecht found (1) that "Quotation 33088" and the accompanying terms and conditions amounted to an offer ("Hammer Haag failed to [meet] its burden of proving that the terms and conditions that include the arbitration clause are, in fact, part and parcel of the contract") and (2) that the "Ring of Steel" contract contains no arbitration clause.[5]

## CONCLUSION

Count III of the amended complaint is **DISMISSED**. Peddinghaus's motion (Doc. 16) to dismiss is **DENIED AS MOOT**. Peddinghaus's motion (Doc. 23) to stay is **GRANTED**, and this action is **STAYED** until entry in state court of a final judgment (including disposition of any matter suspending rendition

---

[4](...continued)
contradict the express terms of the ensuing written agreement."). But Hammer Haag responds (Doc. 26 at 15) that no writing exists "resolv[ing] or contradict[ing] the representations Peddinghaus made to Hammer Haag about arbitrating disputes between the parties":

> As a factual matter, there is no evidence that Peddinghaus ever sent "new" terms and conditions to [Hammer Haag] at any time before disputes arose between the parties. There is also no evidence that Peddinghaus actually did "change" its terms and conditions as it purported in the Illinois court. [Hammer Haag] specifically denies that it ever received any terms and conditions apart from those Peddinghaus sent January 6, 2015. Peddinghaus offered no evidence for having done so at the hearing on the matter in Illinois and Peddinghaus can offer this Court no copy of its "final" contract with [Hammer Haag] because it does not have one.

[5] Judge Albrecht reasoned that the arbitration clause contained within the "terms and conditions of sales" attached to Quotation 33008 formed part of an "initial conversation" for the Ring of Fire's purchase, the contractual terms of which "substantially and fundamentally" changed in the later communications that resulted in an offer and acceptance. (Doc 17-2 at 47–48)

under Rule 9.020(i), Florida Rules of Appellate Procedure).  Hammer Haag must submit a notice within fourteen days of entry of a final judgment.  Peddinghaus may respond within fourteen days.  The clerk is directed to administratively **CLOSE** the case.

ORDERED in Tampa, Florida, on December 7, 2017.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE